# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:07CR00047 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **RONNIE K. VALENTINE**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy C. Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant in this criminal case has moved to suppress certain incriminating evidence discovered by a law enforcement officer during a traffic stop after a search of a locked box found in the trunk of the vehicle. Based on all of the circumstances, I find that the officer had probable cause for a warrantless search of the trunk and the box and thus deny the Motion to Suppress.

I

The defendant is charged with possession of firearms and ammunition after having been convicted of a felony, in violation of 18 U.S.C.A. § 922(g)(1) (West 2000). He has moved to suppress the physical evidence seized, which consists of the

firearms and ammunition in question. An evidentiary hearing has been held on the motion and it is ripe for decision.

At the hearing on the defendant's motion to suppress, United States Park Ranger Katie Pitzenberger testified to the circumstances surrounding the search which yielded the guns and ammunition in question. A video camera was mounted in Pitzenberger's law enforcement vehicle, and microphones were placed on Pitzenberger's person and in her car. The camera and microphones together provided audio and video documentation of the traffic stop. The government introduced a copy of this documentation in the form of a DVD.

Based on all of the evidence presented, I find the following facts.

On July 15, 2007, Pitzenberger was traveling southbound on the Blue Ridge Parkway in her marked vehicle. At approximately mile 176, she noticed a blue Oldsmobile traveling northbound. When she passed the vehicle, she saw that the driver, Ronnie Valentine, was not wearing his seatbelt. Pitzenberger turned her vehicle around and followed the Oldsmobile. Valentine pulled into the parking lot of the Mabry Mills Restaurant and Pitzenberger followed.[1] Valentine pulled into a

---

[1] Pitzenberger testified that Valentine abruptly braked and turned into the parking lot. However, the DVD shows that Valentine activated his turn signal well in advance of turning into the parking lot.

parking space, and Pitzenberger parked her car behind the Oldsmobile, perpendicular to it. She did not activate her lights or sirens.

Valentine and his passenger, Melissa Lynch, exited the vehicle. While getting out of the car, Lynch almost fell. Pitzenberger testified that Lynch was wearing dirty clothes and that her sheer shirt did not adequately cover her breasts. Lynch appeared unaware of her disheveled appearance and her eyes were glassy. Pitzenberger approached Valentine and Lynch and asked for identification. Neither were able to produce a form of identification. On cross examination, Pitzenberger testified that from this moment on, neither Lynch nor Valentine were free to leave.

In response to Pitzenberger's questioning, Lynch gave her name, date of birth, and residence.[2] Pitzenberger told Lynch to empty her pockets. Lynch asked why she was being searched and Pitzenberger did not answer the question. Instead, Pitzenberger asked Lynch what drugs she was taking, and Lynch denied being under the influence of any drugs. Lynch then complied with Pitzenberger's request and emptied her pockets. Pitzenberger obtained permission to look inside a cigarette pack and found what she believed to be a crack pipe. Pitzenberger handcuffed Lynch and

---

[2] Pitzenberger testified that Lynch was "stumbling and mumbling." However, all of Lynch's responses were clear, prompt, and audible on the DVD.

- 3 -

placed her in the back of her police car. Pitzenberger told Lynch that she was being detained in order to "advance the investigation of narcotics."

Pitzenberger returned her attention to Valentine and resumed questioning him. Valentine showed Pitzenberger a North Carolina title to the vehicle. He said he had just purchased the vehicle and that it was still titled in his sister's name. Valentine denied that his driver's license was suspended. Ronnie Valentine said that his name was Daren Valentine. Valentine spelled the first name a couple of different ways. Pitzenberger called dispatch to run a check on the North Carolina temporary tags. She told the dispatcher, "I'm going to take him [Valentine] into custody in just a minute."

While waiting for information on the car, Pitzenberger resumed questioning Valentine. Eventually, he admitted his driver's license had been suspended and that he had given her his brother's name. Pitzenberger asked Valentine for his real name and birthday and then told him to write down the information.

Next, Pitzenberger asked Valentine, "What am I going to find in your car?" Valentine said, "Nothing." Prior to searching Valentine, Pitzenberger asked him what she would find in his pockets. He told her he had money. Pitzenberger searched Valentine and found $1,031 in cash in his pocket. Valentine said the cash was from his lawnmower business and denied possessing it to purchase drugs.

- 4 -

Prior to searching the car, Pitzenberger again asked what she would find. Specifically, she asked if she would find crack or methamphetamine in the car. Valentine denied possessing any drugs. Pitzenberger then ordered Valentine to stand in front of her car while she searched the Oldsmobile. Pitzenberger did not ask for permission to search the vehicle, and Valentine did not consent to the search. After she finished searching the passenger compartment, Pitzenberger asked Valentine where the keys to the trunk were. He told her they were in the ignition. In the trunk, Pitzenberger found a locked metal box, approximately twelve inches by twelve inches. Initially, Valentine denied knowledge of what was inside the locked box and possession of the key to the locked box, but eventually he told Pitzenberger that it contained his brother's gun.

Pitzenberger searched Valentine again and read him his Miranda rights. Valentine elected to waive his rights and continue answering Pitzenberger's questions. He told her there were two loaded guns in the locked box and told her where to find the key to the locked box. Valentine stated that the guns were loaded when he purchased them and that he had purchased them because someone had been stealing from him. Again, Pitzenberger asked Valentine about what drugs she would find in the vehicle and he denied possessing drugs. Pitzenberger put Valentine in the squad car. She told him that he was not under arrest and that she had not yet decided

what to do with him. Pitzenberger told Valentine that he was "being detained for the suspicion of . . . ." She did not complete her sentence and did not tell Valentine why he was being detained. In her testimony, she explained that she was detaining him for suspicion of possession of narcotics.

At this time, Pitzenberger radioed dispatch to request a check on Melissa Lynch and Ronnie Valentine.[3] Both Lynch and Valentine were handcuffed in her car.

Pitzenberger opened the locked box and found a .22 caliber revolver, a .38 caliber revolver, and ammunition. She relayed the serial numbers of the guns to the dispatcher and requested a canine unit. Upon learning that it would take thirty-five to forty minutes for a canine unit to arrive, Pitzenberger canceled her request. She explained to the dispatcher that the Oldsmobile would be impounded and could be searched with a canine unit at a later time.

Thereafter Valentine was arrested and charged with the present offense. No drugs were found in the vehicle and Valentine has not been charged with any drug offense in this case.

---

[3] On the DVD it is clear that Valentine stated his birthday was "5-24-56." Pitzenberger apparently misunderstood him or was unable to read his handwriting because she repeated the date "6-24-56" to the dispatcher. This resulted in confusion and Pitzenberger subsequently accusing Valentine of lying to her about his birthday.

II

The Fourth Amendment of the United States Constitution requires that all searches be supported by a warrant based on probable cause. *Katz v. United States*, 389 U.S. 347, 357 (1967). Certain exceptions to the warrant requirement have been recognized. *Id.* ("Over and again this Court has emphasized that the mandate of the Fourth Amendment requires adherence to judicial processes, and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (internal alterations, quotations and citations omitted)). Among these exceptions is the so-called automobile exception, first recognized in *Carroll v. United States*. 267 U.S. 132, 153-54 (1925). Law enforcement officers are not constitutionally obligated to obtain a warrant before searching an automobile if they have probable cause to believe that they will find contraband or evidence of a crime in the vehicle. *Id.* ("But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."); *see also United States v. Ross*, 456 U.S. 798, 809 (1982) ("In short, the exception to the warrant requirement established in *Carroll*

. . . applies only to searches of vehicles that are supported by probable cause. In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.").

This exception has been justified by the inherently mobile nature of automobiles and the reduced expectation of privacy that people have in their vehicles. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam); *United States v. Chadwick*, 433 U.S. 1, 12-13 (1977); *Carroll*, 267 U.S. at 153. When executing a warrantless search of an automobile, law enforcement officers are permitted to search the passenger compartment and the trunk if they have probable cause to believe the object of the search could be concealed in either area. *Ross*, 456 U.S. at 825 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). Additionally, they may search containers within the vehicle, if they have probable cause to believe that the object of the search could be found in the container. *California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.").

Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of

legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). It is based upon the common sense and experience of the officer in the field. *Id.* at 231-32. "The task . . . is simply to make a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. When determining whether probable cause existed, my task is to find the facts leading up to the search and then determine whether those facts, "viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). In other words, the totality of the circumstances must be analyzed from the point of view of a reasonable officer at the moment just prior to the search. It is of no consequence that the officer's belief was not borne out by the fruits of the search. Instead, the question is whether a reasonable officer would have concluded that she had probable cause to believe a search of the vehicle would yield contraband or evidence of a crime.

In this case, I find that Ranger Pitzenberger had probable cause to search the vehicle and its contents for drugs. Prior to searching the vehicle, Pitzenberger had observed Lynch stumble while getting out of the car, saw her disheveled appearance, and noted her glassy eyes. From these facts, it was reasonable for Pitzenberger to infer that Lynch was impaired by drugs or alcohol. A search of Lynch's person

revealed a glass pipe, commonly used to smoke crack cocaine. Pitzenberger had questioned Valentine about his identity and ownership of the car and received suspicious responses. Finally, Pitzenberger found a large sum of cash in Valentine's pocket. I find that the inebriated appearance of the passenger, her possession of drug paraphernalia, the defendant's suspicious responses, and the cash were sufficient evidence from which a reasonable officer could conclude that she had probable cause to search the vehicle for narcotics. *See, e.g., United States v. Davis*, 177 F. App'x 347, 350 (4th Cir. 2006) (unpublished) (finding there was probable cause to search vehicle for contraband when occupant reached toward glove compartment after officers activated blue lights, passenger failed to respond to officer's request for identification, passenger's eyes were glassy, passenger admitted to smoking marijuana, and officer recognized a marijuana seed and leaf in the car); *United States v. Bullock*, 94 F.3d 896, 899 (4th Cir. 1996) (finding probable cause to search vehicle when driver was unable to produce any form of identification, officer observed large roll of cash, two cellular telephones, and a beeper in the vehicle, and when driver and passenger gave unbelievable explanations for their road trip).

    Because Pitzenberger had probable cause to search the vehicle for narcotics, she had probable cause to search any area in the vehicle where narcotics might have been concealed. The revolvers and ammunition were found in a locked box,

- 10 -

Case 1:07-cr-00047-JPJ-PMS   Document 31   Filed 10/11/07   Page 10 of 11   Pageid#: 59

approximately twelve inches by twelve inches, located in the trunk. Certainly the locked box was capable of concealing narcotics, and therefore Pitzenberger had probable cause to search it. Her legitimate search of the locked box uncovered, not drugs, but loaded revolvers and ammunition. Those revolvers and ammunition, as the fruit of a search based upon probable cause, are therefore admissible against the defendant.

At the hearing, the government argued that even if Pitzenberger did not have probable cause to search the vehicle, the revolvers and ammunition inevitably would have been discovered in an inventory search of the vehicle subsequent to Valentine's arrest. Because I find that Pitzenberger had probable cause to search the vehicle for narcotics, there is no need to reach this argument.

III

For the foregoing reasons, it is **ORDERED** that the defendant's Motion to Suppress the firearms and ammunition is DENIED.

ENTER: October 11, 2007

/s/ JAMES P. JONES
Chief United States District Judge